IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| THOMAS MICHAEL WHEELER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 3:16-cv-01623-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Thomas Michael Wheeler brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

## BACKGROUND

In April 2012, plaintiff applied for DIB and SSI. Tr. 275–87. His applications were denied initially, Tr. 123–50, and upon reconsideration, Tr. 151–82. On July 30, 2014, plaintiff appeared at a hearing before an ALJ. Tr. 35–96. At the hearing, plaintiff testified and was represented by an attorney. A medical expert and a vocational expert also testified. The ALJ found plaintiff not disabled in a written decision issued August 22, 2014. Tr. 12–29. After the Appeals Council denied review, plaintiff filed a complaint in this Court. Tr. 1–3.

Plaintiff is 55 years old. Tr. 39. He dropped out of high school, but obtained his GED through the job corps in 1981. Tr. 41–42. He was in the Navy reserves from 1985 to 1988. Tr. 43. Plaintiff alleges disability beginning January 1, 2011.[1] Prior to that date, plaintiff had many years of work at the substantial gainful employment level; most notably, he spent six years working in a warehouse owned by his father. Tr. 49, 64. After the warehouse went out of business, he worked for one year as a night porter at a hotel. Tr. 49. Since that job ended in 2006, he has sporadically performed a series of short-term and/or part-time jobs. For example, he gathered signatures on a petition to legalize marijuana, Tr. 62, delivered phonebooks, Tr. 63, and worked as an airport driver for a motel, Tr. 46. None of those jobs lasted long enough to produce income at the substantial gainful employment level.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

---

[1] Plaintiff initially alleged disability beginning March 19, 2007. Tr. 12. However, plaintiff was previously found not disabled in a decision issued December 3, 2010. Tr. 101–09. At the hearing, plaintiff amended his disability onset date to January 1, 2011 to account for that decision. Tr. 67. In the decision now under review, the ALJ found plaintiff had demonstrated changed circumstances sufficient to overcome the presumption of continuing nondisability. Tr. 17; *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 15; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: right shoulder bursitis and severe depression. Tr. 16; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the

listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 17; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity to

> [P]erform medium work as defined in 20 C[.F.R. §§] 404.1567(c) and 416.967(c) except the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant could stand and/or walk for 6/8 hours and sit for 8/8 hours. The claimant is limited to simple, routine tasks consistent with work at the SVP 1 and SVP 2 levels. The claimant should have no contact with the general public.

Tr. 19; 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). At step four, the ALJ concluded plaintiff could perform his past work as a store laborer. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits. Tr. 29.

## DISCUSSION

On appeal, plaintiff's allegations of error all concern the severity of symptoms stemming from his depression; plaintiff does not challenge the ALJ's evaluation of his physical limitations. Plaintiff contends that the ALJ erred by giving little weight to (1) plaintiff's testimony that he is unable to sustain any type of work; (2) the opinion of Dr. Miner, PsyD, an examining psychologist; and (3) the opinion of Dr. Garrison, PhD, the reviewing psychiatrist designated as a medical expert at the hearing.

I.  *Plaintiff's Symptom Statements*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible

Page 4 – OPINION AND ORDER

is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that he has never had his own apartment or house. He has always stayed with friends or relatives "until I wore out my welcome and I had to try to find someplace else to live." Tr. 64. He has no hobbies anymore because nothing interests him. Tr. 56. He cannot read because the words run together and he cannot sustain interest through an entire movie. Tr. 61. He is preoccupied with his relationship with his cat. Tr. 59–61. He struggles with maintaining appropriate hygiene. Tr. 65–66. He does not have any friends and has "lots of altercations with people"; he is unsure why he has these difficulties and surmised he may "rub [them] the wrong way[.]" Tr. 55.

The ALJ found plaintiff "credible to the extent he suffers from" depression, which impairs his ability to work. Tr. 27. But the ALJ concluded plaintiff's "functional limitations are not as significant and limiting as have been alleged." *Id.* The ALJ's conclusion rested on three factors: plaintiff's pre-onset work history, plaintiff's post-onset work history, and the medical record.

With respect to plaintiff's pre-onset work history, the ALJ noted that plaintiff stopped working at the warehouse because the business closed. *Id.* The ALJ acknowledged that the warehouse was a family business and noted evidence in the record tending to show that plaintiff was permitted to continue working there despite significant job performance issues. Nonetheless, the ALJ found that plaintiff had worked at the substantial gainful employment level for three years before the warehouse job and one year after the warehouse job. Tr. 27-28. The

Page 5 – OPINION AND ORDER

ALJ found plaintiff's work history, taken as a whole, to be evidence that plaintiff's limitations did not prevent him from working.

The ALJ's reliance on plaintiff's work at the substantial gainful employment level is unconvincing for three reasons. First, plaintiff stopped working at that level four years prior to his alleged disability onset date. Second and relatedly, the record clearly shows that plaintiff's depression has worsened over time. Indeed, the ALJ conceded as much in his decision, finding that plaintiff showed his depression had become more severe between 2010 and 2014. Tr. 17. Finally, plaintiff testified extensively about the reasons he stopped working as a night porter in 2006: he made cognitive errors that caused him to crash a customer's car, he had difficulty juggling more than one task and maintaining pace, and he experienced altercations with coworkers and customers. Tr. 49–52. All of those reasons are attributable to interpersonal difficulties and problems with memory and concentration, which the record clearly and consistently links to plaintiff's depression. Thus, plaintiff's pre-onset work history is not a convincing reason to discredit his statements about the symptoms of his depression.

Turning to plaintiff's post-onset work history, the ALJ found that plaintiff's short-term employment selling vacuums, delivering newspapers, collecting signatures on a petition to legalize marijuana, and selling his personal collection of saw blades show plaintiff has "maintained some ability to work" since his onset date. Tr. 28. But the ALJ's reading of the record is not supported by substantial evidence. To be sure, plaintiff's work history from 2007 to the time of the hearing shows many *attempts* to work. But critically, none of those attempts was successful. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007) ("[W]hen a [DIB or SSI] recipient works for less than nine months, the Administration does not consider the trial work period as evidence that the individual is no longer disabled.") Rather than supporting the

inference that plaintiff is able to work, these serial, failed attempts to sustain work support the conclusion that plaintiff's impairments are, in fact, disabling. *See id.* (collecting cases where the court held that an unsuccessful, short-term attempt at work "actually *supported* . . . allegations of disabling [symptoms]" (emphasis in original)).

Finally, the ALJ asserted that the medical record "does not support the severity of the claimant's physical or mental impairments." *Id.* The ALJ characterized plaintiff's course of treatment as routine and conservative, and concluded that plaintiff's alleged symptoms were "disproportionate to the medical findings." *Id.* The ALJ clearly identified which treatments he considered conservative, noting that plaintiff has never been psychiatrically hospitalized or placed in out- or in-patient treatment, takes only "routine" front-line SSRI medication, was treated by a primary care physician and not a psychiatrist, has engaged in supportive and solution-focused therapy, and stopped attending psychological treatment for several months. Tr. 23. But it is not possible to evaluate whether those treatments conflict with plaintiff's allegations about the severity of his symptoms because the ALJ never specified *which* symptom statements conflict with plaintiff's course of treatment. Without a more concrete explanation of which of plaintiff's allegations conflict with the medical record, I cannot endorse the ALJ's reasoning as clear and convincing.[2] *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (requiring an

---

[2] The ALJ was more specific in identifying discrepancies between objective medical findings and plaintiff's allegations regarding physical symptoms. For example, the ALJ found plaintiff's assertion that he would have difficulty lifting a gallon of milk without pain difficult to reconcile with the absence of findings of serious shoulder impairment in two separate appointments in 2013 and 2014. Tr. 22. But inconsistencies between statements about physical impairments and the medical record serve only to undermine plaintiff's testimony about his physical symptoms; they cannot be converted into a global finding about plaintiff's veracity with respect to all symptoms. *See Trevizo v. Berryhill*, — F.3d —, 2017 WL 2925434, *9 n.5 (9th Cir. Jul. 10, 2017) (disapproving the use of Social Security claimants' testimony to "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness").

Page 7 – OPINION AND ORDER

ALJ's reasoning to be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").

II. *Medical Opinion Evidence*

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1520(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

With respect to plaintiff's mental impairments, the evidence from treating and examining sources, including Dr. Miner, is remarkably uniform. It shows that plaintiff suffers from moderately severe to severe depression, has substantial challenges with personal hygiene, is unusually fixated on his relationship with his cat, has longstanding difficulties interacting with others, has challenges interpreting social cues and knowing what is appropriate in conversation, and has deteriorating cognitive function. The reviewing physicians split regarding how to

interpret this evidence. Dr. Garrison, the medical expert at the hearing, assessed plaintiff with mild restriction in activities of daily living, marked restriction in social functioning, and moderate restriction in concentration, persistence, and pace. Tr. 70. Dr. Garrison concluded that plaintiff's impairments equaled a listing and recommended that plaintiff be found disabled. By contrast, Dr. Hennings, who reviewed plaintiff's application on reconsideration, opined that plaintiff was only moderately impaired in social functioning and concluded that plaintiff would be able to sustain some work activity. Tr. 161–62.

Because there is a conflict between the opinions of reviewing physician Dr. Hennings, on the one hand, and of examining physician Dr. Miner and medical expert Dr. Garrison, on the other hand, ALJ's decision to give little weight to the opinions of Dr. Miner and Dr. Garrison may be upheld only if it is supported by specific, legitimate reasons.

A.  *Dr. Miner's Opinion*

Dr. Miner consultatively examined plaintiff in July 2012. She took a complete history and performed a variety of assessments. Dr. Miner concluded:

> Given Mr. Wheeler's odd presentation, poor communication skills, and impairments interpersonally, he is unlikely to maintain gainful employment for an extended period of time. While he demonstrates memory impairments in the Low Average range, this does not appear to be the primary barrier to adequate daily functioning. Mr. Wheeler could likely engage in simple and repetitive tasks but may be inclined to cease working simply because he 'feels like it' without awareness of the implications of such a decision. He is likely to struggle to interact appropriately with supervisors, coworkers and the public. Give[n] the apparent chronic nature of his presentation, his prognosis is poor and unlikely to change dramatically.

Tr. 557.

The ALJ gave little weight to Dr. Miner's opinion because he found it inconsistent with plaintiff's post-onset work history.[3] For the same reasons set out in the section addressing plaintiff's symptom statements, that is not a legitimate reason to reject Dr. Miner's assessment. Plaintiff's serial, failed attempts to work do not undermine Dr. Miner's opinion; they support it.

The ALJ also stated that the limitations in the RFC regarding SVP levels[4] and no interaction with the public accounted for limitations set out in Dr. Miner's opinion. But even if the SVP limitations adequately account for plaintiff's memory and concentration problems, the limitations in the RFC do not address plaintiff's difficulty interacting with supervisors and coworkers. The ALJ failed to provide legally sufficient reasons to reject Dr. Miner's opinion.

B.   *Dr. Garrison's Opinion*

Dr. Garrison appeared at the hearing as a medical expert. After summarizing plaintiff's mental health records, Dr. Garrison testified that he agreed with Dr. Miner that plaintiff is disabled. Specifically, Dr. Garrison interpreted Dr. Miner's opinion as concluding that plaintiff's limitations equal a listed impairment, compelling a finding of "disabled" at step three of the five-step analysis.

Social Security regulations enumerate a set of specific "listed" impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment is either listed or "equal to a listed impairment," the regulations mandate a finding of "disabled" without regard to

---

[3] The ALJ also cited plaintiff's pre-onset work history at the substantial gainful activity level. On appeal, the government concedes this is not a legitimate reason to discredit Dr. Miner's opinion. Def.'s Br. 4.

[4] The Dictionary of Occupational Titles classifies jobs in a variety of ways, including by SVP, or specific vocational preparation. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009). The SVP level measures "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* (citation and internal quotation marks omitted).

Page 10 – OPINION AND ORDER

age, education, or work experience. *Id.* §§ 404.1520(d), 416.920(d). "[F]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is [medically] equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citation and internal quotation marks omitted).

Dr. Garrison's opinion focused on the Paragraph B criteria of Listing § 12.04, which concerns depression and related disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Per the Paragraph B criteria, a mental disorder meets Listing § 12.04 if it results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked limitations in concentration, persistence, or pace; or (4) repeated episodes of decompensation. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 n.2 (9th Cir. 1999). Dr. Garrison assessed marked restriction in only one of the four areas— social functioning—and so conceded that plaintiff did not *meet* Listing § 12.04. Tr. 70. Nonetheless, Dr. Garrison opined that plaintiff's depression *equaled* Listing § 12.04.

The ALJ declined to adopt Dr. Garrison's recommendation regarding step three because Dr. Garrison had not identified any "aggravating factors" to support his listing equivalency opinion. Tr. 25. That is a legitimate reason to reject Dr. Garrison's opinion about the listings. Because an affirmative step-three finding directs approval of a disability application, the bar to listing equivalency is high. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014). Dr. Garrison did not explain why he believed plaintiff's depression equaled Listing § 12.04, and the ALJ was not required to accept his unsupported opinion on that narrow point.[5]

---

[5] In failing to press Dr. Garrison to explain his step three recommendation, the ALJ may have violated his duty to develop the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that an ALJ is required to obtain more information from a doctor when a

Page 11 – OPINION AND ORDER

However, the ALJ otherwise failed to provide legitimate reasons to reject Dr. Garrison's opinion. The ALJ faulted Dr. Garrison for failing to address plaintiff's performance on WMS testing or plaintiff's "mixed" SLUMS scores. Tr. 25. But the record belies that assertion; Dr. Garrison expressly discussed plaintiff's SLUMS scores and assessed moderate limitations in concentration, persistence, and pace, consistent with plaintiff's WMS and SLUMS results. Tr. 68–69. The ALJ also found Dr. Garrison's opinion about plaintiff's limitations inconsistent with plaintiff's work history. Tr. 25. That reason is as unpersuasive with respect to Dr. Garrison's opinion as it was with respect to Dr. Miner's opinion and plaintiff's testimony. In sum, although the ALJ committed no error in rejecting Dr. Garrison's step three conclusion, the ALJ erred by rejecting the rest of Dr. Garrison's opinion.

III.  *Type of Remand*

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. At step one, the reviewing court must determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true."

---

report is "ambiguous or insufficient for the ALJ to make a disability determination."). It is not necessary to decide this issue, however, because remand is warranted on other grounds.

*Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the act." *Id.* at 408 (citation and internal quotation marks omitted).

Here, the ALJ harmfully erred in rejecting plaintiff's testimony about his symptoms, Dr. Miner's opinion, and Dr. Garrison's opinion. Moreover, the record is fully developed. The three improperly discredited pieces of evidence are remarkably consistent with one another and with the record as a whole. The only outlier opinions with respect to plaintiff's mental limitations come from agency reviewing physicians who never examined or even observed plaintiff. Finally, both Dr. Miner and Dr. Garrison expressly opined that plaintiff is disabled and incapable of work at the substantial gainful activity level. Thus, if Dr. Miner's opinion and Dr. Garrison's opinion were credited as true on remand, the ALJ would be required to find plaintiff disabled. Put simply, the record clearly demonstrates that plaintiff's severe social functioning limitations, compounded by his other cognitive limitations, preclude him from working. The record leaves no serious doubt that plaintiff is, in fact, disabled within the meaning of the Act.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this 11 day of ~~July~~ August 2017.

Ann Aiken
United States District Judge

Page 13 – OPINION AND ORDER